NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260340-U

NO. 4-26-0340

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 12, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | Nos. 25JA177 |
| v. | ) | |
| Cassey R., | ) | Honorable |
| Respondent-Appellant). | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, concluding no issue of arguable merit could be raised on appeal.

¶ 2    Respondent, Cassey R., appeals from the trial court's adjudicatory and dispositional orders finding her minor child, L.R. (born September 2017), to be a neglected minor and finding respondent unfit to "care for, protect, train, educate, supervise or discipline [L.R.]" Appellate counsel now moves to withdraw, citing *Anders v. California*, 386 U.S. 738 (1967), on the basis that he cannot raise any potentially meritorious argument on appeal. See *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) (holding *Anders* applies to termination of parental rights cases). After reviewing the record and counsel's memorandum, we grant the motion to withdraw and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                        A. Shelter Care Petition and Hearing

¶ 5        On October 24, 2025, the State filed a petition alleging L.R. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)). The petition further alleged L.R. was in an environment injurious to her welfare, as evidenced by (1) reports that respondent's home had been without running water "for a few weeks." (2) respondent's methamphetamine usage, and (3) an incident of domestic violence between respondent and her ex-boyfriend, Greg M. The State also filed a petition alleging L.R.'s half-sibling, J.H., (who is not a party to this appeal) was neglected. That same day, the trial court placed temporary custody and guardianship of L.R. with the Illinois Department of Children and Family Services (DCFS). The court later confirmed that L.R.'s father, Kendall T., was a member of the Cherokee Nation, thus making her a "potential Indian Child" under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 *et seq.* (2024)). Kendall is not a party to this appeal.

¶ 6        On January 26, 2026, the Cherokee Nation filed a notice of intervention, stating it was "the intent of the tribe at this time to become a[n] interested party to this case and be involved with all case activity." See 25 U.S.C. § 1911(b) (2024).

¶ 7                              B. Adjudicatory Hearing

¶ 8        In April 2026, the trial court conducted the adjudicatory hearing. At the beginning of the hearing, the court entered into evidence without objection (1) a certified copy of the DCFS investigation report, (2) certified school records for L.R., (3) a certified copy of respondent's criminal conviction in Tazewell County case No. 23-CF-736, and (4) a certified copy of respondent's drug screens.

¶ 9          Nicole Eagle testified she was a child welfare specialist for the Cherokee Nation Indian Child Welfare and has served as a qualified expert witness in ICWA cases. With regard to ICWA cases, Eagle acknowledged the standard for parents engaging in remedial services was "active efforts" rather than "reasonable efforts," as in non-ICWA cases. In Eagle's opinion, L.R.'s current placement was ICWA compliant.

¶ 10          Respondent testified that in October 2025, her home was without running water due to a water leak, which led to a $1,500 water bill. When her landlord refused to fix the leak, respondent attempted to fix it herself. However, she purchased bottled water to drink and to "[w]ash the dishes, wash [their] hands, [and] flush the toilet" when her water was not running. According to respondent, she took L.R. to a friend's house to bathe, but "if [L.R.] wanted to take a bath at home, she could." Respondent was self-employed and made approximately $6,000 cleaning houses in 2025. She was previously in a relationship with Greg M.; however, she denied Greg ever resided with her.

¶ 11          On cross-examination, respondent testified she never bought methamphetamine because she did not "know where to buy it." However, she and Greg used methamphetamine together, and she smoked methamphetamine with other friends. When asked whether L.R. was a "liar," respondent stated, "[S]he might fib a little bit but not too much." Respondent stated L.R. would be lying if she said Greg lived at respondent's home. Respondent admitted that she lied when she told DCFS she did not use illicit substances. She further agreed she tested positive for methamphetamine 14 times while on probation between May 2024 and November 2025. Respondent opined her methamphetamine usage "possibly" had a negative impact on L.R. Respondent recalled an incident on September 29, 2025, during which Greg injured her when he pushed her into a chair and held her down. During the incident, respondent sustained a bloody lip.

¶ 12        Regarding L.R.'s education, respondent testified she and L.R. "sometimes" overslept, causing L.R. to miss school. She agreed L.R.'s school recommended L.R. repeat first grade. However, respondent asserted she "talked to the principal and we fixed that." Respondent insisted L.R. did not need to repeat first grade because it would affect her socially. Moreover, respondent maintained L.R. "wasn't that far behind. I read with her over the summer, and I noticed her reading had progressed a lot."

¶ 13        On redirect examination, respondent avowed she never smoked methamphetamine while L.R. was present. Upon further examination by the trial court, respondent agreed L.R. could get the impression Greg lived with them based on his occasional overnight visits.

¶ 14        During the State's closing argument, respondent interrupted to ask, "Can I walk out of here? Do I have to listen to this?" The trial court responded "Yeah, you can leave. The door's not locked. No, you're welcome to leave. You may end up waiving any right you have to assert, but, otherwise, you're welcome to leave. Go ahead." At which point respondent left the courtroom. After a short recess, the court concluded, "beyond a clear and convincing evidence," L.R. was neglected "based on unsuitable housing, [respondent's] substance abuse, ongoing domestic violence, and failure to meet educational needs." The court described respondent's testimony to be self-serving and "to be very discredited by other reliable evidence."

¶ 15                         C. Dispositional Hearing

¶ 16        Over respondent's counsel's objection, the trial court proceeded immediately to the dispositional hearing. Respondent remained absent from the courtroom during the dispositional hearing.

¶ 17        The dispositional report was filed prior to the hearing and described respondent as uncooperative with DCFS. The report indicated respondent was referred for drug testing in

December 2025, and she failed to appear for five drug drops. Regarding respondent's methamphetamine use, the report stated, "She characterized her use as a recent development saying that she did not use illicit substances until the past year or year and a half (following being sentenced to probation), despite evidence to the contrary." (Emphasis omitted.) Moreover, respondent demonstrated "significant difficulties managing her anger and other intense emotions." (Emphasis omitted.) While the report acknowledged respondent loved L.R., the authors of the report questioned respondent's ability to recognize "the need for significant change in her functioning and a prioritization of [L.R.'s] needs." (Emphasis omitted.)

¶ 18  LaDonna Boken-Buckley testified she had been L.R.'s caseworker since the case began. She opined Kendall was fit and his home was suitable for L.R. During cross-examination, Boken-Buckley recalled multiple instances when respondent was incarcerated and would make unapproved and unsupervised calls to L.R. Additionally, respondent advised Boken-Buckley she was participating in outpatient substance abuse treatment. However, Boken-Buckley was unable to verify respondent's attendance for those services. Boken-Buckley agreed respondent attended visits with L.R., though she would often "arrive late." She further acknowledged respondent and L.R. were bonded.

¶ 19  Following arguments, the trial court found respondent unfit and made L.R. a ward of the court and placed custody and guardianship with Kendall.

¶ 20  This appeal followed.

¶ 21  II. ANALYSIS

¶ 22  On appeal, appellate counsel seeks to withdraw on the basis that he cannot raise any arguments of potential merit. We agree.

¶ 23  The procedure for appellate counsel to withdraw set forth in *Anders* applies to

proceedings under the Juvenile Court Act. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8. Under this procedure, appellate counsel's motion to withdraw must be accompanied by a brief addressing any issue in the record that might arguably support the appeal. *S.M.*, 314 Ill. App. 3d at 685. Counsel must then sketch the argument in support of any issues that could conceivably be raised on appeal, explain why such arguments are frivolous, and conclude the case presents no viable grounds for appeal. *S.M.*, 314 Ill. App. 3d at 685. The record indicates a copy of counsel's motion and accompanying memorandum of law were sent to respondent by mail. This court granted respondent the opportunity to file a response. However, respondent did not file a response.

¶ 24                             A. Adjudicatory Hearing

¶ 25            We first address appellate counsel's assertion no meritorious argument can be made that the trial court erred in adjudicating L.R. neglected. Specifically, counsel states, "The only issue[ ] which might conceivably support an appeal [is] the fact that Respondent claimed she never did [methamphetamine]" in the presence of L.R.

¶ 26            The Juvenile Court Act contains a two-step process for removing a minor from the custody of his or her parents and making the minor a ward of the court. *In re Z.L.*, 2021 IL 126931, ¶ 58. The first step is to hold an adjudicatory hearing to determine whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2024); *Z.L.*, 2021 IL 126931, ¶ 59. A court may find a minor neglected even if the parents are not both neglectful. See *Z.L.*, 2021 IL 126931, ¶ 59. Generally, the State must prove its allegations by a preponderance of the evidence. *Z.L.*, 2021 IL 126931, ¶ 61. However, in ICWA cases, the State must prove its allegations by clear and convincing evidence. 25 U.S.C. § 1912(e) (2024). We will not reverse a trial court's findings of neglect unless they are against the manifest weight of the evidence. *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004). "A decision is against the manifest weight of the evidence when the opposite

- 6 -

conclusion is clearly apparent." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 27        Here, the trial court did not err by adjudicating L.R. neglected. At the hearing, respondent admitted to testing positive for methamphetamine 14 times while on probation between May 2024 and November 2025. Moreover, respondent readily admitted smoking methamphetamine with Greg and various acquaintances, though she denied ever paying for the methamphetamine herself. This admission was contrary to the information respondent provided to DCFS when she denied using illicit substances. While respondent maintained she never used methamphetamine around L.R., the court generally found her testimony not credible. Specifically, the court observed respondent "has minimized [the] impact of her drug use on [L.R.]" Indeed, the court opined respondent's drug use had an impact on L.R.'s education, as evidenced by respondent's positive drug tests coinciding with L.R.'s absences from school. Respondent also admitted to an incident of domestic violence between her and Greg in which she sustained a bloody lip. Accordingly, we conclude the court's order adjudicating L.R. neglected was not against the manifest weight of the evidence. As such, we agree with counsel that no meritorious argument can be made that the court erred in its adjudicatory finding.

¶ 28                              B. Motion to Continue

¶ 29        Counsel next asserts no meritorious argument can be made the trial court erred in denying respondent's counsel's motion to continue after respondent voluntarily left the courtroom. We agree.

¶ 30        A respondent does not have an absolute right to a continuance. *In re Tashika F.*, 333 Ill. App. 3d 165, 169 (2002). Instead, continuances should only be granted where good cause is shown. Ill. S. Ct. R. 901(c) (eff. Oct. 1, 2021). A trial court's denial of a motion for a continuance is reviewed for an abuse of discretion. *In re M.R.*, 393 Ill. App. 3d 609, 619 (2009). "A trial court

abuses its discretion when no reasonable person would agree with its decision." *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011).

¶ 31        In this case, respondent left the courtroom during closing arguments at the adjudicatory hearing. When respondent asked whether she could leave and if she had "to listen to this," the trial court responded in the affirmative but admonished her that she might "end up waiving any right" she had to assert, but she was "welcome to leave." When the court proceeded immediately to the dispositional hearing, respondent's counsel moved for a continuance due to her absence. Counsel acknowledged respondent "did leave today's proceedings," but he "would like to be given an opportunity to go over the dispositional report with her before proceeding to disposition." The court ultimately denied the motion, finding a continuance would not be in L.R.'s best interest, and respondent willingly left the courtroom while aware she may be waiving certain rights in doing so. Accordingly, we agree with counsel no meritorious argument can be made that the court erred in denying respondent's counsel's motion to continue.

¶ 32                              C. Dispositional Hearing

¶ 33        Appellate counsel next asserts he can make no meritorious argument that the trial court erred in its dispositional finding.

¶ 34        If the trial court adjudicates the minor abused, neglected, or dependent, the second step is to hold a dispositional hearing to determine whether the minor should be made a ward of the court. 705 ILCS 405/2-21(2) (West 2024); *Z.L.*, 2021 IL 126931, ¶ 60. "At the dispositional hearing, the trial court determines whether it is consistent with the health, safety, and best interests of the minor and the public that the minor be made a ward of the court." *Z.L.*, 2021 IL 126931, ¶ 60; see 705 ILCS 405/2-21(2) (West 2024). In making that determination, the court "may consider the acts and/or omissions of the parents." *Z.L.*, 2021 IL 126931, ¶ 60. When making its

- 8 -

determination, the court will consider "whether the parents \*\*\* are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so," as well as whether "the health, safety and best interest of the minor will be jeopardized if the minor remains in the custody of the minor's parents." 705 ILCS 405/2-27(1) (West 2024). "[A] dispositional order entered in a proceeding under the Juvenile Court Act \*\*\* is a matter committed to the sound discretion of the court." *In re Beatriz S.*, 267 Ill. App. 3d 496, 500 (1994). A court's dispositional findings "will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order." (Internal quotation marks omitted.) *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41.

¶ 35        The evidence at the dispositional hearing showed that respondent had failed to provide verification for her substance abuse assessment and failed to attend five drug drops, as requested by DCFS. Moreover, the authors of the dispositional report observed respondent's characterization of her methamphetamine usage as "a recent development" (emphasis omitted), occurring after her probation, was refuted by other evidence. Further, the authors of the dispositional report questioned respondent's ability to acknowledge that significant changes needed to be made in her own functioning and her prioritization of L.R.'s needs. Indeed, the trial court indicated "the biggest thing [for respondent] is substance abuse." The court further noted concerns "that [respondent] is currently and actively using" illicit substances. While respondent had attended visits with L.R., there were several instances during respondent's incarceration when she was communicating with L.R. Boken-Buckley described these communications as both unapproved and unsupervised and contrary to DCFS's instructions.

¶ 36        Under these circumstances, the trial court's determinations that it was in L.R.'s best

interest to be made a ward of the court and that respondent was unfit based on her substance abuse were not against the manifest weight of the evidence. Accordingly, we agree with counsel, no meritorious argument can be made that the court erred in its dispositional finding.

¶ 37                                 III. CONCLUSION

¶ 38            For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 39            Affirmed.